**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 11-cv-00685-REB

JOHN MICHAEL GALLOWAY,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

**ORDER AFFIRMING COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed March 18, 2011, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of residuals of a closed head injury, fused left elbow, double vision, and poor balance.[2] After his application for disability

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2] Plaintiff originally also claimed to be impaired as a result of hepatitis C. He does not pursue any claim related to that alleged impairment in this appeal.

insurance benefits was denied,[3] plaintiff requested a hearing before an administrative law judge. This hearing was held on December 17, 2008. At the time of the hearing, plaintiff was 52 years old. He has an high school education with some college course work and past relevant work experience as an military aircraft mechanic, assembler, and janitor. He has not engaged in substantial gainful activity since October 17, 1986, his alleged date of onset.

The ALJ found that plaintiff was not disabled between his alleged date of onset through June 30, 1989, his date last insured, and, therefore, not entitled to disability insurance benefits. The judge concluded that plaintiff had failed to show the existence of a medically determinable impairment during the period of his alleged disability. She, therefore, found plaintiff not disabled at step two of the sequential evaluation.

Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the

---

[3] Plaintiff previously received a closed period of disability insurance benefits from December, 1980, through June, 1982, related to the motorcycle accident from which alleged impairments emanate. (*See* Tr. 116-117.) Benefits were terminated based on medical improvement related to plaintiff's ability to work. (*See* Tr. 17.) Moreover, plaintiff filed three previous applications for disability insurance benefits based on the onset date alleged in this appeal, but did not appeal the denial of those claims. (*See* Tr. 115 (showing prior applications in October, 2000, April, 2005, and January, 2008).)

impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th

Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. **Brown**, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. **Hedstrom v. Sullivan**, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." **Musgrave v. Sullivan**, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff alleges that the ALJ erred in concluding that he did not suffer from any medically determinable impairment between his alleged date of onset and his date last insured. I agree with him on this account. Nevertheless, because nothing in the record suggests that plaintiff's medically determinable impairments were severe, as that term is defined by applicable regulations, I conclude that any error in this regard clearly was harmless and that remand is unwarranted.

Under the Commissioner's regulations, a claimant can be found disabled only if he is "unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1527(a)(1). A medically determinable impairment is a "anatomical, physiological, or psychological abnormalit[y] which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. The existence of a medically determinable impairment must be established by "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."[4] *Id.*

---

[4] These terms are further defined in the regulations:

> (a) Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.
>
> (b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They

There can be little doubt that plaintiff suffered from medically determinable impairments within the meaning of these regulations. Plaintiff was severely injured in June, 1980, after he was struck by a car while riding his motorcycle. He suffered a closed head injury, a dislocated left elbow fracture, a compact distal right radius fracture, a fracture through the shaft of the left distal radius, a ruptured spleen, a liver laceration, and a contused kidney. (Tr. 368.) Even after he recovered from these acute injuries, plaintiff developed calcifications around his left elbow that resulted in a frozen joint. Although he subsequently had surgery on the elbow some time in 1983, it was noted that he would "never attain normal use of the left arm" due to "severe limitation of elbow flexion and extension." (Tr. 361.) It is also beyond dispute that he suffered from problems with memory, balance, and double vision.

The existence of these impairments is documented by medical signs and findings on examination of various medical providers in 1983 through 1985. Although outside the period of disability, such evidence should be considered in determining whether plaintiff was disabled as of his alleged date of onset. *See **Hamlin v. Barnhart***, 365 F.3d 1208, 1215 (10th Cir. 2004). Moreover, given the apparent permanent nature of plaintiff's impairments, it would be intellectually dishonest to infer that they resolved

---

must also be shown by observable facts that can be medically described and evaluated.

(c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 C.F.R. § 404.1528.

completely after 1982, regardless of the medical evidence. Thus, I find that the ALJ erred in concluding that plaintiff did not suffer from any medically determinable impairment during the alleged period of his disability.

Nevertheless, I am compelled to consider whether the error in this regard was harmless. *See **Bernal v. Bowen***, 851 F.2d 297, 303 (10th Cir. 1988). At step two of the sequential evaluation process, the ALJ also must determine if the claimant's medically determinable impairments are "severe." 20 C.F.R. § 404.1521. An impairment is not considered severe if it is no more than a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." **Social Security Ruling 85-28**, 1985 WL 56856 at *3 (SSA 1985). Although this showing is *de minimis*, the mere existence of a medically determinable impairment alone is insufficient to establish the requisite severity. ***Hinkle v. Apfel***, 132 F.3d 1349, 1352 (10th Cir. 1997).

In this case, the medical records in this case do not support a conclusion that plaintiff's impairments were severe under even this lenient standard. Concerning plaintiff's impairments of memory, balance, and vision, in May, 1983, plaintiff reported to Dr. Rudolf Taubner that he "had a resolution of almost all of his deficits," despite "occasional double vision on lateral gaze" and a "little incoordination if he runs." Overall, however, he "denie[d] any major problems" and reported that he attended college that year and passed his courses, "including his math course." (Tr. 357.) Although Dr. Taubner concluded that plaintiff had permanent neurological residuals

from his accident, these were "slight" and "subtle." (Tr. 358.)

Medical records from the fall of 1984 show a similar theme of progress toward more normal neuropsychological functioning. In early October, 1984, Dr. Donald Trahan found that plaintiff "has recovered well and most of his cognitive deficits have resolved." (Tr. 342.) Indeed, plaintiff reported that "his cognitive abilities seem reasonably normal except for decreased attentional ability and mild memory problems," as well as occasional problems with balance. (Tr. 343.) Dr. Trahan concluded that there was "no evidence of neuropsychological impairment of sufficient severity to preclude his return to AD [active duty] status," although his physical limitations merited further evaluation. (Tr. 336.) Later that month, plaintiff reported to Dr. Carlos Palacios that despite some continuing deficits, "his memory and higher cortical functions ha[d] improved." (Tr. 337.) At a followup examination in May, 1985, plaintiff gave similar reports to Dr. Frank Franco. He denied headaches and dizzy spells and reported double vision only when excessively fatigued. His balance problems were described as occasional but infrequent. (Tr. 225.)

The same reports of mild and non-severe limitation were echoed with respect to plaintiff's left arm and elbow impairments. Although Dr. Foth found in May, 1983, that plaintiff would "never attain normal use of the left arm because of severe limitation of elbow flexion and extension" (Tr. 361), in September, 1984, plaintiff told Dr. Thomas Shepler that his left elbow was "without difficulties" and that he was "satisfied with his elbow in this particular position" (Tr. 344). Dr. Shepler noted that plaintiff had "fairly good pronation and supination" and had converted to right-handedness to compensate. (Tr. 344.) Although the left elbow bothered him when the weather changed, he took no

medication and had "no essential complaints." (Tr. 345.)

Likewise, plaintiff reportedly denied "any major complaints regarding the left arm and hand" when examined by Dr. Palacios in October, 1984. (Tr. 337.) His physical examination was "unremarkable," and he had "no difficulty with sensory system, gait, or station." (Tr. 338.) Similar findings were reported by Dr. Franco following his May, 1985, examination. Although plaintiff had some immobility with his left elbow which was reportedly affected his work in an unspecified way, he reported pain "only when the weather changes" and took no medication at those times. Dr. Franco found no local pain or tenderness over the elbow and noted that plaintiff "takes no medications [nor] does he seek any medical care at this time." (Tr. 225.)

In short, the medical evidence of record does not support a conclusion that plaintiff's determinable impairments were sufficiently severe in the period prior to his alleged date of onset to overcome plaintiff's burden at step two. Coupled with the facts that plaintiff was performing substantial gainful activity during a significant portion of this same time period, *see* 20 C.F.R. § 404.1520(b), and that he did not seek medical treatment at all during the alleged period of his disability – indeed, did not seek any treatment until 1998 – this dearth of probative medical evidence demonstrates the lack of reversible error in the ALJ's step two determination.

Granted, the Air Force did conclude in October, 1985 that plaintiff was 90 percent disabled and unemployable from December 1, 1981 through December 31, 1985. (Tr. 220-222; *see also* Tr. 339.) "Although another agency's determination of disability is not binding on the Social Security Administration, it is evidence that the ALJ must

9

consider and explain why he did not find it persuasive." ***Grogan v. Barnhart***, 399 F.3d 1257, 1262-63 (10th Cir. 2005) (citation omitted).  ***See also*** 20 C.F.R. §§ 404.1512(a) & (b)(5).  It is true that the ALJ did not discuss this particular finding directly, although she did allude to plaintiff's continuing receipt of VA disability benefits.  (Tr. 17.)

Nevertheless, any error in this regard was undoubtedly harmless also, for the reasons already discussed.  The medical record from the final VA examination and disability determination shows that although plaintiff reported experiencing "double vision at time of excessive fatigue" but that he had "no double vision at [that] time." Once again, his occasional balance problems that were described as "infrequent," and his gait and heel and toe walking were normal at the time of the examination. Moreover, plaintiff stated that "he has no problems with the right or left forearm and denies any pain of difficulty in motion."  (Tr. 220.)  The ALJ herself noted plaintiff's limited complaints and complete lack of medical care during the relevant time period, despite the availability of care through the Veterans Administration, in finding that his impairments did not withstand step two scrutiny.  (Tr. 17-18.)  Finding no reversible error in that determination, I affirm.

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 26, 2012, at Denver, Colorado.

BY THE COURT:

*Bob Blackburn*
Robert E. Blackburn
United States District Judge